```
             IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION


Thomas Dean Phillips, Jr.,      :

        Plaintiff,              :

     v.                         :        Case No. 2:15-cv-2840

Commissioner of Social Security,         JUDGE GEORGE C. SMITH
                                         Magistrate Judge Kemp
        Defendant.              :
```

                    REPORT AND RECOMMENDATION

                    I.   Introduction

   Plaintiff, Thomas Dean Phillips, Jr., filed this action seeking review of a decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income.  Those applications were filed on July 5, 2012, and alleged that Plaintiff became disabled on October 1, 2009.

    After initial administrative denials of his claim, Plaintiff was given a hearing before an Administrative Law Judge on April 8, 2014.  In a decision dated June 25, 2014, the ALJ denied benefits.  That became the Commissioner's final decision on July 22, 2015, when the Appeals Council denied review.

    After Plaintiff filed this case, the Commissioner filed the administrative record on January 26, 2016.  Plaintiff filed a statement of specific errors on April 7, 2016, to which the Commissioner responded on June 3, 2016.  Plaintiff has not filed a reply brief, and the case is now ready to decide.

      II.   Plaintiff's Testimony at the Administrative Hearing

    Plaintiff, who was 45 years old as of the date of the hearing and who attended high school through the ninth grade, testified as follows.  His testimony appears at pages 41-70 of the administrative record.

Plaintiff first testified that he had not worked since his application date, although he had been encouraged by his case worker to look for work. Plaintiff had worked for Capital City Awning in the past, installing awnings on houses, a job which involved significant amounts of standing, lifting, and using tools. He then worked making deliveries from a delicatessen, and also doing other work such as washing dishes.

The ALJ noted that Plaintiff walked into the hearing with a cane to assist him. Plaintiff said that he did not have a prescription for it, but he used it when he left the house. It helped him to take weight off his right leg. The ALJ also asked about drug and alcohol use. Plaintiff responded that he did not have those issues any longer.

Counsel then questioned Plaintiff about his back pain. He said that it was present in his low back and that it radiated down both legs. The pain affected his balance. Cold and wet weather made his pain worse. Surgery had been recommended, but Plaintiff was not emotionally prepared for it, and went to counseling to address that issue. He had been prescribed physical therapy, which made his back worse, as did spinal injections. He would lie down for a quarter of the day to help him cope with his pain, and also used a heating pad or took a hot bath. His pain also affected his ability to concentrate.

Plaintiff also testified to emotional conditions. He had experienced suicidal thoughts and was irritable being around people. It was hard for him to deal with stress, and he was discouraged about not being able to accomplish anything. Plaintiff described some auditory hallucinations and said that he had always been paranoid. Plaintiff said he would have difficulty concentrating for two hours and could not work for eight hours even with the ability to move about.

In a typical day, Plaintiff would lie down, watch

television, or try to do dishes.  He did not do other household chores but sometimes fixed meals for himself.  He could dress himself but had trouble putting on his pants, socks, and shoes.

### III.  The Medical Records

The pertinent medical records are found beginning at page 336 of the record and can be summarized as follows.  Since the statement of errors focuses solely on mental impairments, the Court will not summarize any records relating to Plaintiff's physical impairments.

Plaintiff was evaluated by Netcare in 2009 after he reported feeling unstable.  He reported issues with anger which had been present for over nine years.  There were also indications of depression and substance abuse.  His mood was depressed but he was oriented and logical.  The provisional diagnoses ultimately included depressive disorder, anxiety disorder, personality disorder, and substance dependence.  He was admitted to the crisis stabilization unit for further treatment, and then discharged on medication with a recommendation to seek further mental health services.  (Tr. 346-67).

Plaintiff was again seen at Netcare in January, 2012 suffering from a major depressive disorder.  He reported various symptoms including loss of interest in activities, insomnia, and relationship difficulties.  He had been going to counseling and getting medication but missed an appointment and was discharged from that program.  He expressed a desire to resume treatment by antidepressants.  The provisional diagnoses at that time included major depressive disorder with psychotic features and PTSD.  He was admitted for stabilization and medication was prescribed.  On his discharge, there was no evidence of overt psychosis. (Tr. 387-412).  He came back to Netcare in May, saying that he had stopped taking his medications because he could not afford them, and that he had relapsed into substance abuse.  At that time, he

was looking for work as a restaurant cook.  He was given a follow-up appointment with Dr. Lee.  (Tr. 413-27).  It appears that he kept that appointment and began a medication regimen.

The record contains a number of treatment notes from Dr. Lee.  They are somewhat hard to read.  However, they do contain entries indicating, for example, that Plaintiff was "a little bit" depressed and had always been anxious, and that he was seeking work.  (Tr. 433).  Another note indicated his job search was difficult due to his legal history and physical limitations.  (Tr. 473).  On September 14, 2012, his appearance, mood/affect, thought content and perceptions, and behavior and functioning were all within normal limits.  (Tr. 477).  At an earlier visit, he displayed a moderate degree of depression and anxiety.  (Tr. 483).  Some of these notes were made by counselors and not Dr. Lee directly.  It appears that he was diagnosed with major depression, anxiety, and ADHD.  (Tr. 523).

Plaintiff went back to Netcare on July 24, 2013, complaining of mental exhaustion and reporting suicidal thoughts.  His stressors included unemployment and chronic pain.  His mood was depressed and his affect was flat.  At that time, his GAF was rated at 31, although it had been as high as 50 in the past year.  He was admitted for stabilization and a follow-up plan was developed.  His diagnoses included depressive and anxiety disorders.  (Tr. 503-19).  After that date, he continued to see Dr. Lee, and on September 20, 2013, was described as "doing OK" although he had a blunt affect and depressed mood.  (Tr. 541).

Dr. Lee completed a questionnaire on March 10, 2014 on which he evaluated Plaintiff's mental functional capacity.  Dr. Lee said that Plaintiff had either marked or extreme impairments in his activities of daily living, social functioning, and maintaining concentration, persistence, and pace, and that he had suffered four or more episodes of decompensation.  He also rated

Plaintiff's abilities in more specific areas of functioning, indicating marked limitations in his ability to deal with detailed instructions, sustain an ordinary routine, work around others, complete a normal workday or work week without interruption from psychologically-based symptoms, interact with the general public, respond to changes in the work setting, travel to unfamiliar places, set goals or make plans, and tolerate customary unskilled work pressures.  (Tr. 641-44).

Lastly, Plaintiff went to Netcare again in March, 2014, indicating he was at his breaking point after a fight with his long-term girlfriend.  At that time, he was receiving psychiatric services but was not in counseling.  He was not admitted for further observation or treatment but an appropriate discharge plan was developed.  (Tr. 647-57).  He came back to Netcare about three weeks later and was assessed as a high suicide risk at that time.  (Tr. 660-66).

Two state agency psychologists also commented on Plaintiff's mental residual functional capacity.  The first, Dr. Waggoner, concluded that Plaintiff had moderate limitations in his ability to maintain concentration and attention for extended periods, to perform within a schedule, to work around others including co-workers, supervisors, and the general public, and to respond to changes in the work setting.  She thought that he could do routine tasks which were not fast-paced or had strict production demands and that he could interact occasionally and superficially with others.  (Tr. 93-94).  Her evaluation was made on August 8, 2012.  The second state agency reviewer, Dr. Rudy, concurred, making his findings on December 12, 2012.  (Tr. 123-25).

### IV.  The Vocational Testimony

George W. Coleman III was called to testify as a vocational expert at the administrative hearing.  His testimony begins at page 71 of the administrative record.

Mr. Coleman first testified about Plaintiff's past relevant work. He said the delivery job (catering truck operator) was unskilled and medium, although Plaintiff performed it at the light exertional level. The other job, which Mr. Coleman described as a "construction worker II" position, was unskilled and very heavy, but performed by Plaintiff at the medium level.

Next, Mr. Coleman was asked some questions about someone with Plaintiff's background and who could work at the light exertional level but could not climb ladders, ropes, or scaffolds, could crawl occasionally, and could frequently climb stairs and ramps and stoop, kneel, and crouch. Further, the person was limited to the performance of tasks that did not require a fast, assembly line work pace or had strict production requirements, and which were performed in an environment where changes would be infrequent and contact with others would be only occasional. Mr. Coleman said that someone with those restrictions could not do Plaintiff's past work but could be employed as a car wash attendant, presser, or motel or hotel housekeeper. He gave numbers for those jobs in both the regional and national economies.

Next, Mr. Coleman was asked how use of a cane would affect the ability to do those jobs. He said that most light jobs could not be done by someone who needed to use a cane, at least without an accommodation by the employer. He then identified a number of sedentary jobs which the hypothetical person could perform even if a cane were required. Finally, Mr. Coleman testified that a typical employer tolerated an employee being off task only ten to twelve percent of the time in unskilled and semiskilled work settings, and that if the need to change positions caused someone to be off task more than that, the ability to do such jobs would be affected. The same would be true if the person missed two days or more of work per month or had many marked mental

-6-

limitations relating to work functions.

### V. The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 12-28 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the special earnings requirements of the Social Security Act at all relevant times through the date of the decision. Second, he found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. Going to the next step of the sequential evaluation process, the ALJ concluded that Plaintiff had severe impairments including degenerative disc disease of the lumbar spine with spondylolisthesis, affective disorder, anxiety disorder, personality disorder, and polysubstance abuse (in remission). The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at the light exertional level although he could not climb ladders, ropes, or scaffolds, could crawl only occasionally, and could frequently climb stairs and ramps and stoop, kneel, and crouch. Further, Plaintiff was limited to the performance of work-related tasks that did not require a fast assembly line work pace and did not have strict production requirements, and which were performed in an environment where contact with others would be only occasional and changes in duties and processes would be infrequent

With these restrictions, the ALJ concluded that Plaintiff could perform the jobs identified by the vocational expert, including car wash attendant, presser, and hotel or motel

housekeeper.  The ALJ further determined that these jobs existed in significant numbers in the regional and the national economy. Consequently, the ALJ decided that Plaintiff was not entitled to benefits.

VI. Plaintiff's Statement of Specific Errors

In his statement of specific errors, Plaintiff raises these issues: (1) the ALJ did not properly consider whether there were additional severe impairments indicated in the record; (2) the ALJ did not properly evaluate the opinions of the treating and reviewing sources; (3) the ALJ did not properly evaluate Plaintiff's credibility; and (4) as a result of these errors, the hypothetical questions posed by the ALJ to the vocational expert were improper.  These issues are evaluated under the following legal standard.

Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB,

340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

### A. Other Severe Impairments

Plaintiff's first claim of error is that the ALJ should have found additional severe impairments beyond those set forth in the administrative decision. He does not, however, even suggest which impairments those might be. Rather, he appears to argue that the ALJ had an obligation to define the psychological disorders which he found Plaintiff to suffer from (affective disorder, anxiety disorder, personality disorder, and polysubstance abuse (in remission)) in strict accordance with the DSM-V. As a secondary argument, he contends that, perhaps because the ALJ did not define these impairments more precisely, "[t]here was lack of any Listing 12.04, 12.06 and 12.08 ...." Statement of Errors, Doc. 14, at 5.

As the Commissioner correctly points out, an ALJ is not required to match up psychological impairments with specific sections of the DSM-V or any other diagnostic tool. What is important, for purposes of making the proper five-step analysis under the Social Security Act, is determining the extent to which any impairment - severe or nonsevere - impacts the claimant's ability to perform work-related functions. Even the failure properly to identify a specific impairment as severe can be harmless error if, at a later step of the process, the ALJ takes the functional limitations of that impairment into account in determining a claimant's residual functional capacity. Maziarz v. Sec'y of HHS, 837 F.2d 240 (6th Cir. 1987); Post v. Comm'r of Social Security, 2016 WL 1745054, *4 (S.D. Ohio May 3, 2016), adopted and affirmed 2016 WL 3002427 (S.D. Ohio May 23, 2016).

In the absence of any argument by Plaintiff either that the ALJ disregarded evidence of a specific, additional severe impairment, or that the ALJ should have found additional functional limitations arising out of such an impairment, the Court cannot find any error in the way that the ALJ addressed the issue of severe impairments.

### B.  The Opinion Evidence

Next, Plaintiff argues that the ALJ did not give proper weight to the opinion of his treating psychiatrist, Dr. Lee, and gave too much weight to the opinions of the state agency reviewers even though they did not have the benefit of reviewing an additional eighteen months of treatment history.  The Commissioner counters that the ALJ gave good reasons for discounting Dr. Lee's opinions, and that those reasons are supported by the record.

It has long been the law in social security disability cases that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once.  20 C.F.R. §404.1527©; see also Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981).  However, in evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion.  Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990).  The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living.  Cutlip v. Secretary of HHS, 25 F.3d 284 (6th Cir. 1994).  No matter how the issue of the weight to be given to a treating physician's opinion is finally resolved, the ALJ is required to provide a reasoned explanation

-10-

so that both the claimant and a reviewing Court can determine why the opinion was rejected (if it was) and whether the ALJ considered only appropriate factors in making that decision. Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).

In this case, Dr. Lee concluded that Plaintiff had a large number of marked or extreme limitations arising out of his various psychological conditions.  The ALJ, in rejecting that conclusion, cited the following reasons for giving it minimal weight.  First, he noted that Dr. Lee provided no support for any of his conclusions.  Second, he concluded that Dr. Lee's own treatment notes did not support that degree of limitation. Additionally, Dr. Lee's treatment was limited to medication management and supportive counseling, rather than more aggressive tactics like involuntary hospitalization.  Fourth, he pointed out that Dr. Lee did not document any abnormal signs or symptoms which would be apparent in someone as limited as Dr. Lee described Plaintiff.  The ALJ acknowledged that Plaintiff had sought stabilization at times, but always responded to treatment within a few days, and that these episodes were sometimes related to substance abuse.  (Tr. 24-25).  In discussing the Listing of Impairments, the ALJ also commented on the differences between Plaintiff's activities of daily living and his ability to function in the community and Dr. Lee's very pessimistic assessment of those abilities.  (Tr. 17-18).

Although Plaintiff cites an abundance of case law construing the "treating physician" rule, the statement of errors does not argue precisely why the reasons given by the ALJ for giving only minimal weight to Dr. Lee's opinion are not supported by the record.  The ALJ correctly noted both that Dr. Lee's treatment notes - and they are not particularly detailed - and the counselor's notes do not seem to support the marked or extreme restrictions indicated by Dr. Lee, or that on the form itself,

-11-

Dr. Lee did not explain or point to any evidence which would explain the severity of his findings.  Relying on such factors is well within the ALJ's discretion.  See, e.g., Ellars v. Comm'r of Social Security, -- Fed.Appx. --, 2016 WL 2610234, *2 (6th Cir. May 6, 2016)(holding that " the administrative law judge properly gave a check-box form little weight where the physician provided no explanation for the restrictions entered on the form and cited no supporting objective medical evidence").  It is also true that Plaintiff appeared capable of activities of daily living - for example, caring for himself, taking public transportation, assisting with family responsibilities, and putting in job applications - which Dr. Lee did not believe he could do.  And, as always, although it is within the province of a mental health professional to base diagnoses and opinions as to functional capabilities on self-reported symptoms, if the ALJ finds - as this ALJ did - that the claimant is not fully credible, he may discount opinions based on those reports.  See, e.g., Dultmeyer v. Comm'r of Social Security, 2014 WL 991900, *4 (N.D. Ohio March 13, 2014)(finding that ALJ gave good reasons for discounting the opinion of a treating source when that source relied on self-reported symptoms which the ALJ "generally found not credible").

   The other portion of Plaintiff's argument is that the ALJ should not have given substantial weight to the opinions of the state agency reviewers because they did not have the chance to review later-created records.  However, by the time the second of these opinions was given, Plaintiff had been undergoing counseling and treatment for the better part of a year.  Nothing in the subsequent records is remarkably different from the records which these psychologists reviewed.  The ALJ may accept such opinions if he considered the fact that they were not based on a review of the entire record, and if he considered those additional records.  See, e.g., Fisk v. Astrue, 253 Fed.Appx. 580, 585 (6th Cir. Nov. 9, 2007).  That is the situation here.

-12-

Consequently, the Court finds no error in the ALJ's evaluation of the opinion evidence.

### C.   The Credibility Finding

Plaintiff's third substantive argument is that the ALJ did not properly evaluate his credibility. More specifically, he argues that he was penalized for attempting to find work and for having a criminal history, and that the ALJ's consideration of these factors was error.

Evaluation of a claimant's subjective reports of disabling symptoms is subject to a two-part analysis. First, the Commissioner should determine if there is objective medical evidence which confirms the presence of such symptoms. If not, the Commissioner should determine if the claimant suffers from an objectively-established medical condition of sufficient severity to permit a reasonable inference to be drawn that the disabling symptoms actually exist. See Duncan v. Secretary of H.H.S., 801 F.2d 847, 853 (6th Cir. 1986). This procedure is reflected in 20 C.F.R. §404.1529(a).

It is important to note that these inquiries are to be made separately, and that if there is objective evidence of a sufficiently severe underlying condition, a claimant can prove the existence of disabling symptoms due to that condition through other evidence even if the medical evidence is not helpful in establishing those symptoms. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994). Thus, the Commissioner is not permitted to reject allegations of disabling symptoms solely because objective medical evidence is lacking, but must consider other evidence, including the claimant's daily activities, the duration, frequency, and intensity of the symptoms, precipitating and aggravating factors, medication (including side effects), treatment or therapy, and any other pertinent factors. 20 C.F.R. §404.1529(c)(3). If the Commissioner summarily rejects the claimant's testimony without considering these matters, reversal

or remand may be warranted.

In order to reject claimant's credibility, the Commissioner cannot rely solely on personal observation of the claimant but must base the credibility determination on "some other evidence." Weaver v. Secretary of H.H.S., 722 F.2d 310, 312 (6th Cir. 1983) (emphasis in original); see also, Persons v. Secretary of H.H.S., 526 F.Supp. 1202 (S.D. Ohio 1981). In light of the Commissioner's opportunity to observe the claimant's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. Kirk v. Secretary of H.H.S., 667 F.2d 524, 538 (6th Cir. 1981).

Here, it is plain that the ALJ did not rely solely on the two matters discussed in the statement of errors in order to find that Plaintiff was not fully credible. The ALJ cited to, among other factors, Plaintiff's misrepresentations about the extent of his substance abuse (Tr. 24), his statement that his legal history was a significant reason why he could not find work, id., his failure to follow through on treatment recommendations, his noncompliance with medication regimes, (Tr. 21), and a general inconsistency between his subjective reports of both physical and psychological symptoms and the objective evidence of record. The latter consideration is proper so long as it is not the sole basis of the ALJ's credibility analysis. See Kitts v. Colvin, 2016 WL 4537698, *6 (S.D. Ohio Aug. 30, 2016), citing Cross v. Comm'r of Social Security, 373 F.Supp.2d 724, 733 (N.D. Ohio 2005). The Court therefore finds no merit in Plaintiff's third claim of error.

### D.  The Hypothetical Question

This claim of error depends entirely upon Plaintiff's arguments that the ALJ erred in other respects, thus making his residual functional capacity finding (and the question asked to the vocational expert which incorporated that finding) improper and not supported by substantial evidence. Since the Court has found no error in the ALJ's determination of Plaintiff's residual

functional capacity, this final claim of error must be overruled as well.

### VII.  Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be overruled and that judgment be entered in favor of the defendant Commissioner of Social Security.

### VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a _de novo_ determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation _de novo_, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge